## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 26 2020, 8:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Bruce Carr
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Cory A. Shoffner
Brody B. Shoffner
Shoffner & Shoffner, LLP
LaPorte, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re: The Adoption of A.S.,
a minor child,

S.J., and P.M.,

*Appellants-Intervenors,*

v.

A.H.,

*Appellee-Petitioner,*

February 26, 2020

Court of Appeals Case No.
19A-AD-1250

Appeal from the LaPorte Superior Court

The Honorable Richard R. Stalbrink, Jr., Judge

Trial Court Cause Nos.
46D02-1807-AD-27
46D02-1709-GU-115

**Robb, Judge.**

# Case Summary and Issue

[1] A.H. was appointed guardian of A.S. and later adopted her. After the adoption was granted and the guardianship dismissed, P.M. and S.J. filed motions to intervene in both the guardianship and adoption actions. They also requested the trial court correct error and grant them relief from judgment to reopen the proceedings so a guardian ad litem could be appointed and A.S.'s best interests re-litigated. The trial court denied their motion to intervene and, in turn, their motions to correct error and for relief from judgment. P.M. and S.J. now appeal, and we address the following issue: whether the trial court abused its discretion when it determined neither P.M. nor S.J. had standing to intervene and request relief in these actions. Concluding the trial court did not err, we affirm.

# Facts and Procedural History

[2] The people involved in this case and their relationships are:

- A.S. ("Child") – the child at the center of both the guardianship and adoption proceedings

- S.M.S. ("Mother") – Child's biological mother

- M.S. – Child's father as evidenced by the paternity affidavit he executed following Child's birth and his registration with the putative father registry

- P.M. ("Grandmother") – Child's maternal grandmother

- A.H. ("Guardian") – Child's legally-appointed guardian and later, adoptive mother

- S.J. – man alleged by Grandmother to be Child's father

- "Appellants" – collectively, Grandmother and S.J.

[3] Child was born on August 27, 2009. M.S. completed a paternity affidavit on August 28 and is registered with the putative father registry. From September 2015 to August 2016 and intermittently from June 2017 to September 2017, Child resided with Grandmother. On September 14, 2017, Guardian filed a petition to be appointed Child's guardian. Mother and M.S. were served with notice of the petition. M.S. consented to the appointment of Guardian. Mother never appeared or otherwise participated in the action. On October 4, 2017, Guardian was appointed temporary emergency guardian, and on December 1, 2017, the guardianship was made permanent.

[4] On August 10, 2018, Grandmother filed a Petition of Grandparent for Rights of Visitation in the guardianship cause number. On Guardian's motion, the trial court struck the pleading because Grandmother was not a party to the guardianship action and the petition was not filed in accordance with the statutory requirements for a grandparent visitation action.[1] Thereafter,

---

[1] Indiana Code chapter 31-17-5 provides that a child's grandparent may obtain visitation rights if, among other things, the child was born out of wedlock and the court finds that visitation rights are in the best interests of the child. Ind. Code §§ 31-17-5-1(a)(3), -2(a). Critically, the grandparent visitation statute also provides that a proceeding for grandparent visitation is commenced *by the filing of a verified petition* entitled "In Re the Visitation of _____" in a court in the county in which the child resides. Ind. Code §§ 31-17-5-3(a), -

Grandmother filed an "Objection to Guardianship Unless Granted Rights of Visitation."[2] Guardian again moved to strike and requested attorney fees. The trial court set a hearing on Guardian's motion for December 11, 2018. On September 28, 2018, Grandmother filed a Motion for Appointment of Guardian Ad Litem, alleging that Grandmother had heard that S.J. may be Child's father and requesting a guardian ad litem be appointed to represent Child's best interests in the case. Guardian moved to strike this pleading as well, and on October 10, 2018, the trial court denied Grandmother's motion because Grandmother was not a party to the guardianship case. Grandmother then filed a motion to reconsider this ruling. The trial court added the motion to reconsider to the matters to be considered on December 11.

[5] Meanwhile, on July 16, 2018, Guardian filed a petition to adopt Child. M.S. consented to the adoption and Guardian gave notice to Mother. Mother never appeared. On August 17, 2018, Grandmother filed in the adoption proceeding an "Objection to Adoption Unless Granted Rights of Visitation," identical in almost all respects to the objection filed on the same date in the guardianship case.[3] The trial court granted Guardian's motion to strike the objection because

---

4(1). Thus, a petition seeking grandparent visitation cannot just be bootstrapped into an existing cause but is a cause unto itself.

[2] This pleading is virtually identical to the Petition for Grandparent Visitation with the primary exception of the prayer for relief. In the petition for visitation, Grandmother requested reasonable visitation rights; in the objection, Grandmother requested that A.H.'s guardianship of Child be revoked and Grandmother be granted temporary guardianship unless she is awarded reasonable visitation rights.

[3] On this date, Grandmother *also* filed a Petition of Grandparent for Rights of Visitation in a separate cause number. *See* Verified Motion to Intervene and Correct Error in Cause No. 46D02-1709-GU-115/46D02-

Grandmother was not a party to the adoption action and because grandparent visitation is not appropriately addressed in this way. A home study was conducted, a final hearing held, and a decree of adoption was issued on October 29, 2018, granting Guardian's petition to adopt Child.

[6] On December 10, 2018, Guardian filed a motion to dismiss the guardianship action because the guardianship was no longer necessary due to the adoption being finalized. The trial court granted the motion to dismiss and cancelled the hearing set for December 11.

[7] The two cases converged when, on January 9, 2019, Grandmother filed nearly identical "Motions to Intervene and Correct Error" in both cases. The motions purported to be filed on behalf of both Grandmother and S.J., but no appearance was ever entered for S.J. and he never appeared in court to advance his own interests. In part, the motions alleged:[4]

> Comes now Intervenors [S.J.] and [Grandmother], by counsel, and pursuant to Trial Rules 21(A) and 24(A) of the Indiana Rules of Civil Procedure, move the Court for leave to intervene in this

---

1807-AD-27, ¶ 13 (mentioning that "Grandmother filed her separate visitation action on August 17, 2018 under Cause No. 46D02-1808-MI-001290"). This petition for grandparent visitation is also virtually identical to the objections filed in the guardianship and adoption proceedings. It does not appear that any proceedings have been had on this petition, as the only entry on the Chronological Case Summary for Cause No. 46D02-1808-MI-1290 is the filing of the petition. Therefore, it is not clear whether the petition was served upon A.H. as required by Indiana Code section 31-17-5-5.

[4] Grandmother has not included a copy of these pleadings (or many others) in her appendix. *Contra* Ind. Appellate Rule 50(A)(2)(f) (stating the appendix in a civil appeal *shall* include "pleadings and other documents from the Clerk's Record . . . that are necessary for resolution of the issues raised on appeal[.]"). Pursuant to Indiana Evidence Rule 201, however, we have taken judicial notice of the records of the court below necessary to inform our decision.

action, and pursuant to T.R. 59 and T.R. 60(B) move the Court to correct its order[s] entered, [10/29/18 allowing Guardian to adopt the Minor Child and] 12/11/18 dismissing the [guardianship] cause.

* * *

7. Indiana's Guardianship statute is intended to protect the rights of the natural parents and specifically precludes a guardianship Court from entering orders in the absence of notice to the parents and requires the Court to consider the best interests of the Minor.

8. Indiana's Adoption Statute requires notice of the proceedings be given to the natural parent and grandparent of the child and the Court to consider the best interests of the minor.

9. The Guardian in the instant case, who is also the petitioner for adoption . . ., wholly failed to provide the natural father and grandparent (intervenors herein), with notice of the adoption proceeding and/or final hearing therein or to consider the best interest of the Minor.

* * *

42. There is no question that Intervenors have standing to complain of this Court's ruling. They have alleged a personal

stake in the outcome of the controversy and, as Father[5] and Grandmother, seek the best interests of the Minor.

\* \* \*

44. The natural bond between the natural father, the maternal Grandmother, and the minor child is sacred, and the petition for adoption and guardianship in this case failed to establish that the natural father had freely and voluntarily surrendered his child for adoption.

\* \* \*

54. Neither the Grandmother nor the Father had notice of the Minor's final adoption by the Guardian until after the Court had already granted the relief requested by the Guardian.

\* \* \*

Wherefore, for the reasons set forth above, Intervenors respectfully move the Court for leave to intervene in this action, for the Court to correct the errors in its order of adoption entered on October 29, 2018 [and dismissal entered December 11, 2018] and to reinstate [these] action[s] . . . .

---

[5] Appellants' insistence on calling S.J. "Father" throughout the trial and appellate proceedings (and for that matter, calling Grandmother "Custodial Grandmother" in their brief to this court) is a misnomer. M.S. signed a paternity affidavit at Child's birth and registered with the putative father registry. Legally, M.S. is Child's father. S.J. has done nothing to assert his alleged biological ties to Child, including appearing personally in these cases to represent his own interests.

Verified Motion to Intervene and Correct Error in Cause No. 46D02-1709-GU-115/46D02-1807-AD-27.

[8]     A hearing was held on the motions over two days in February and March of 2019. The trial court issued an order on May 9, 2019, denying what it characterized as Appellants' motions to intervene, correct errors, and for relief from judgment:

Findings of Fact

1. [Mother] and [M.S.] are the biological parents of the Child.

2. The Putative Father Registry that was submitted to the Court clearly lists [M.S.] as the father of the Child.

3. [M.S.] consented to both the Guardianship and Adoption petitions.

4. [Mother] did not appear at the guardianship hearing, adoption hearing or any of the subsequent hearings on these issues.

5. [Grandmother] is the Child's maternal grandmother. However, [Grandmother] has not attempted to file for grandparent visitation through any of the appropriate channels afforded to her under Indiana law.

6. [S.J.] appeared on behalf of [Guardian] in the Guardianship case and gave no indication or testimony that he believed he was the biological father of the [Child].

7. No evidence has been presented to the Court that [S.J.] is the [f]ather of the Child other than statements made in filings under these cause numbers. . . . [S.J.] did not appear at either hearing in which [Grandmother] was attempting to intervene both personally and on his behalf. Additionally, [S.J.] has not made any attempts to assert paternity over the [C]hild through any of the appropriate channels afforded to him by Indiana law.

* * *

10. Despite filing multiple documents under both cause numbers starting in August of 2018, [Grandmother] and [S.J.] did not file a Petition to Intervene in either cause until January 9, 2019. This formal attempt to intervene coming after the adoption had been granted on September 29, 2018 and the guardianship discharged on December 11, 2018.

### I. Motion to Intervene Pursuant to Trial Rules 21 and 24

1. In order to request the Final Adoption Order and the Guardianship Dismissal Order be set aside pursuant to Trial Rule 59, [S.J.] and [Grandmother] must first prove that they have standing to intervene in these actions.

2. Trial Rule 24(A) . . . states in relevant part that upon timely motion, anyone shall be permitted to intervene in an action when a statute confers an unconditional right to intervene.

3. Pursuant to I.C. § 31-19-4, a putative father is entitled to notice of an adoption if he has registered with the putative father registry.

* * *

5. Therefore, because [S.J.] has not registered with the putative father registry nor established paternity in a separate proceeding, [S.J.] was not entitled to notice of the Petition for Adoption of the [Child].

6. Regarding notice of a pending guardianship petition over a minor, I.C. § 29-3-6-1(a)(3) states [to whom notice must be given].

7. [N]either [Grandmother] nor [S.J.] were entitled to notification of the Guardianship Petition.

8. Pursuant to I.C. § 31-19-4.5-1.5, notice to a grandparent regarding an adoption petition is limited to the issue of visitation and may not be used to contest an adoption.

9. [Grandmother] received notice of the adoption proceedings as evidenced by her attorney's filing of his appearance just twenty-five (25) days after the filing of the Petition for Adoption.

* * *

11. Therefore, because [Grandmother] received the limited notice regarding visitation, [she] was not entitled to notice regarding the final adoption hearing because she was not a party to the proceeding and is also precluded from intervening in the adoption proceedings.

* * *

13. Therefore, because [Grandmother] and [S.J.] are precluded from intervening in the adoption, neither party has standing to request for the Order to be set aside.

\* \* \*

## II. Motion to Correct Error Pursuant to Trial Rule 59

1. Trial Rule 59(A) states in relevant part that . . . a Motion to Correct Error may be made by the trial court or by any party.

2. Neither [Grandmother] nor [S.J.] are parties to the adoption or guardianship proceedings, nor do either have the right to intervene. Therefore, both individuals are precluded from requesting a Motion to Correct Error.

3. Notwithstanding the preclusion of filing the Motion, the Motion was filed more than 30 days after the final judgment in violation of Trial Rule 59(C).

## III. Relief from Judgment or Order Pursuant to Trial Rule 60

\* \* \*

2. Like Trial Rule 59, Trial Rule 60 contains the same requirement that one must be a party to file a Motion for Relief from Judgment.

3. As previously stated, [Grandmother] and [S.J.] are precluded from filing a Motion for Relief from Judgment in these proceedings based on the fact that they are not and cannot be parties to the above actions.

4. Assuming, *arguendo*, that either individual could request a Motion for Relief from Judgment, there was no testimony or evidence provided to support the allegations by [Grandmother] of fraud and/or misrepresentations, as required by Trial rule 60(B),

to justify setting aside the Dismissal of the Guardianship and/or the Adoption Order. Furthermore, although [Grandmother]'s counsel argued that the Orders should be set aside based on the best interests of the [C]hild, the best interest of the child standard is not a factor in Trial Rule 60(B).

* * *

Wherefore, it is hereby ordered, adjudged and decreed that [Grandmother] and [S.J.'s] Motions to Intervene, Correct Error[,] and Motion for Relief from Judgment, and any other outstanding motions not specifically mentioned, be, and are hereby, denied.

Appealed Order at 3-9.[6] Grandmother and S.J. now appeal the trial court's order denying their motions.

# Discussion and Decision

## I. "Best Interests"

[9] We begin by noting that Grandmother and S.J. ostensibly appeal the trial court's order denying their motions to intervene, their motions to correct error, and their motions for relief from judgment. *See* Notice of Appeal at 2; Appealed Order. However, the bulk of Grandmother and S.J.'s brief is directed

---

[6] The trial court's order also sua sponte struck certain GPS records that were attached to Appellants' proposed order on their Motion to Intervene and Correct Error because they had not been admitted at the hearing on the basis that they were hearsay. Grandmother and S.J. do not challenge the trial court's ruling on these records.

to the substantive issues underlying the guardianship and adoption decisions; in particular, their desire to have both the guardianship and the adoption proceedings reopened to appoint a guardian ad litem to represent Child's allegedly unrepresented best interests and basically start anew. *See, e.g.,* Amended Brief of Appellants at 5 (stating one of the issues on appeal as "[w]hether the trial court erred when it refused to consider the child's best interests to appoint a guardian ad litem in her guardianship and adoption proceedings."); *id.* at 17 (appellants arguing that "the trial court erred when it did not protect the best interests of the child and appoint a guardian ad litem for her"); *id.* at 23 (appellants concluding "the trial court should have appointed a guardian ad litem, heard evidence to determine what was in the [Child's] best interests, and then made a decision which fell within the bounds of the evidence"). Although Grandmother and S.J. allege that the best interests of Child were never considered in these proceedings, the statutory authority for both guardianship and adoption proceedings requires that the trial court consider the best interests of the child before either appointing a guardian or approving an adoption. *See* Ind. Code § 29-3-5-4(9) (stating the court shall appoint as guardian a qualified person most suitable and willing to serve giving due consideration to, among other things, the best interest of the minor); § 31-19-11-1(a) (stating the court shall grant a petition for adoption if, among other things, the adoption is in the best interest of the child). Therefore, to argue that Child's best interests were *never* considered by the trial court is misleading when what Appellants are actually asserting is that the trial court did not hear what *they* consider to be Child's best interests.

[10]     Moreover, as the trial court reminded counsel during the hearing when counsel repeatedly tried to argue Child's best interests, *if* Grandmother and S.J. proved they were entitled to intervene and *if* they further proved they were entitled to relief from the guardianship and adoption judgments, "*then* we would get to the evidentiary side of that." Transcript, Volume II at 19 (emphasis added). That Guardian "did not establish this burden [of proving Child's best interests were served by the guardianship/adoption] at the February . . . or March . . . [motion to intervene] hearings" is of no consequence because one, Guardian was under no obligation to do so in this proceeding on a *procedural* issue where the burden was on the Appellants to show entitlement to relief, and two, the trial court had *already* found that Child's best interests were proven when it issued the orders in the guardianship and adoption proceedings that Grandmother and S.J. now wish to overturn. Amended Br. of Appellants at 13. By repeatedly invoking Indiana's emphasis on the best interests of the child, the Appellants, intentionally or otherwise, have attempted to obfuscate the only issue we are at liberty to decide based on the procedural posture of this case: whether the trial court properly denied the motions to intervene, to correct error, and to grant relief from judgment. And by focusing single-mindedly on the best interests issue, the Appellants have almost wholly failed to provide any argument showing error in the trial court's rulings. We have nonetheless endeavored herein to address the issues as we discern them from the procedural history of this case and from our review of the trial court's thorough order.

# II. Motion to Intervene

Appellants' motion to intervene alleged they were entitled to intervene as of right under Indiana Trial Rule 24(A) because S.J. may be Child's biological father and Grandmother has a right to reasonable visitation, and thus, they were entitled to notice of the proceedings and have standing to object to the lack of notice.[7] Trial Rule 24(A) provides:

> (A) Intervention of Right. Upon timely motion anyone shall be permitted to intervene in an action:

> (1) when a statute confers an unconditional right to intervene[.]

The grant or denial of a motion to intervene is within the discretion of the trial court and we will reverse only for an abuse of that discretion. *Granite State Ins. Co. v. Lodholtz*, 981 N.E.2d 563, 566 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Although Trial Rule 24(C) allows intervention for purposes of filing a motion to correct error or for relief from judgment, a petition to intervene after a judgment is disfavored. *Hiles v. Null*, 716 N.E.2d 1003, 1005 (Ind. Ct. App. 1999). Accordingly, a party seeking to intervene after judgment has been entered must make a showing of "extraordinary or unusual circumstances[.]" *Id.* This is

---

[7] Appellants did not invoke the provisions of Trial Rule 24(B) regarding permissive intervention.

particularly true in adoption cases where we have acknowledged that the finality of an adoption decree "is desirable in order to prevent the emotional strain which would otherwise be imposed upon both the adoptive child and parents, making it difficult for a normal parent-child relationship to develop." *M.R. ex rel. Ratliff v. Meltzer*, 487 N.E.2d 836, 840 (Ind. Ct. App. 1986) (quotation omitted), *trans. denied*.

## A. Guardianship Proceedings

[13]     Notice of a guardianship proceeding over a minor must be given to:

> (A) The minor, if at least fourteen (14) years of age, unless the minor has signed the petition.
>
> (B) Any living parent of the minor, unless parental rights have been terminated by a court order.
>
> (C) Any person alleged to have had the principal care and custody of the minor during the sixty (60) days preceding the filing of the petition.
>
> (D) Any other person that the court directs.

Ind. Code § 29-3-6-1(3).

[14]     We do not have the benefit of most of the filings in the guardianship case, as they were not provided to this court. *See supra*, n.4. However, the trial court found that notice to Child was not required because she is not yet fourteen years of age; notice was given to both Mother and M.S., the "living parents" of

Child; Guardian had the principal care and custody of Child for at least sixty days prior to filing the guardianship petition; and the trial court did not direct notice be given to any other person. There is no evidence in the record that would contradict any of these findings and Grandmother does not say under what provision she believes she was entitled to notice of the guardianship petition. To the extent S.J. contends he should have received notice because he *may* be Child's biological father, he had taken no steps to establish (or even assert) his paternity at the time the guardianship petition was filed, and thus would not have been entitled to notice under this statute as he was not legally a "parent."

[15] Moreover, failure to comply with the notice requirements of the guardianship statute does not automatically invalidate the appointment of a permanent guardian. *Wells v. Guardianship of Wells*, 731 N.E.2d 1047, 1050 (Ind. Ct. App. 2000), *trans. denied*. This is especially true where, as here, the guardianship was dismissed before Appellants objected to the lack of notice. Because Grandmother and S.J. have not shown that they were entitled to notice of the guardianship proceedings, they have not shown a right to intervene in the guardianship action and the trial court did not err in denying their motions to intervene.

## B. Adoption Proceedings

[16] As relevant to this case, notice of adoption proceedings are to be given to a:

person whose consent to adoption is required under IC 31-19-9-1;

[and]

> (3) grandparent described in IC 31-19-4.5-1(3) of a child sought to be adopted.

Ind. Code § 31-19-2.5-3.

[17] Indiana Code section 31-19-9-1, for purposes of this case, requires notice of a petition for adoption be given to the mother of a child born out of wedlock and the father of a child whose paternity has been established by a court proceeding other than the adoption proceeding or by a paternity affidavit, Ind. Code § 31-19-9-1(a)(2). The "father" referenced in this section is *not* S.J. S.J. did not complete a paternity affidavit; M.S. did, and M.S. is therefore the "father" entitled to notice by this section. To the extent S.J. is trying to establish paternity by being named in the motion to intervene in the adoption proceedings that baldly asserts his paternity, such does not entitle him to notice as his paternity must be established in a proceeding "*other than the adoption proceeding*[.]" Ind. Code § 31-19-9-1(a)(2)(A) (emphasis added). Thus, no statute confers on S.J. an unconditional right to intervene in the adoption proceeding.

[18] Indiana Code section 31-19-4.5-1(3), found in the chapter concerning "other persons entitled to notice of adoption," states that notice must be given to a grandparent who:

> (A) is the grandparent of a child sought to be adopted; and

(B) has:

      (i) an existing right to petition for visitation under IC 31-17-5; *and*

      (ii) a right to visitation that will not be terminated after the adoption under IC 31-17-5-9;

at a time prior to the date of the filing of the petition.

(Emphasis added.)

[19] As the grandparent of a child who was born out of wedlock, Grandmother did have an existing right to petition for visitation under Indiana Code chapter 31-17-5 prior to the date the adoption petition was filed in this case, although she had not yet taken the proper steps to assert that right.[8] *See* Ind. Code § 31-17-5-1(a)(3). However, grandparent visitation rights survive an adoption only if the child is adopted by a stepparent or a person who is biologically related to the child. Ind. Code § 31-17-5-9. There is no evidence that A.H. is Child's stepparent or biologically related to her. Therefore, section 31-19-4.5-1(3) does not grant Grandmother the right to notice of the adoption proceedings and accordingly, she had no standing to intervene pursuant to this statute.

---

[8] Indiana Code section 31-17-5-3(b) provides that a petition for grandparent visitation "must be filed prior to the date a decree of adoption is entered." Grandmother's petition for visitation was filed on August 17, 2018, and the adoption decree was entered on October 19, 2018.

Moreover, even if Grandmother had been entitled to notice, her involvement in the adoption proceedings would have been limited to the issue of her own visitation and would not extend to contesting the adoption. Ind. Code § 31-19-4.5-1.5(1). In other words, notice is intended only to allow a grandparent to timely file the necessary petition to secure visitation rights, *not* to allow the grandparent to intervene in the adoption proceedings to contest the adoption, which is precisely what Grandmother was attempting to do here. *See In re Adoption of Z.D.*, 878 N.E.2d 495, 498 (Ind. Ct. App. 2007) (holding that noncustodial grandparents are not entitled to intervene in adoption proceedings); *see also Krieg v. Glassburn*, 419 N.E.2d 1015, 1020 (Ind. Ct. App. 1981) (concluding that the consent of noncustodial grandparents, even those with visitation rights, is not required for adoption), *superseded by statute on other grounds.*

## III. Motions to Correct Error and for Relief from Judgment

Trial Rule 59, governing motions to correct error, provides that the motion "may be made by the trial court, or by any *party*." Ind. Trial Rule 59(B) (emphasis added). Likewise, Trial Rule 60, governing motions for relief from judgment or order, provides that the court "may relieve a *party* or his legal representative from a judgment[.]" T.R. 60(B) (emphasis added). Because we conclude that the trial court did not err in denying the motions to intervene, we also conclude that it properly denied the motions to correct error and motions

for relief from judgment, as Grandmother and S.J. were not proper parties to either action absent intervention.[9]

# Conclusion

We are sympathetic to Grandmother's desire to remain a part of Child's life, and we respect the attempt to determine if S.J. is indeed Child's biological father. However, Indiana law does not give either Grandmother or S.J. the right to intervene in these actions, especially at this late date. *See In re Adoption of T.L.W.*, 835 N.E.2d 598, 601-02 (Ind. Ct. App. 2005) (noting, in the context of a Trial Rule 60(B) motion to review an adoption order, that the "demand for prompt action" in a case that "has the potential to impact the lives of young children" is a "logical and necessary outgrowth of the State's legitimate interest in children's need for permanence and stability"). The trial court did not abuse its discretion in denying the motions to intervene, and absent the right to

---

[9] A.H. requests an award of appellate attorney's fees, arguing that the Appellants' appeal is groundless. A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish a mere lack of merit, but something more egregious. *Harness v. Schmidt*, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010). "[W]e must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." *Townsend v. Townsend*, 20 N.E.3d 877, 880 (Ind. Ct. App. 2014), *trans. denied*.

Although Appellants' appeal is ultimately unsuccessful, we cannot say that their arguments are utterly devoid of all plausibility. "Unsuccessful" does not equate to "groundless" and we cannot say that Appellants' arguments on appeal were "something more egregious" than "mere lack of merit." *See Harness*, 924 N.E.2d at 168. As such, we decline A.H.'s request for an award of appellate attorney's fees. *See Matter of Guardianship of Lamey*, 87 N.E.3d 512, 527 (Ind. Ct. App. 2017) (providing that appellate attorney's fees should only be awarded when the arguments on appeal are utterly devoid of all plausibility).

intervene, in denying the motions to correct error and for relief from judgment. The judgment of the trial court is affirmed.

[23] Affirmed.

Bradford, C.J., and Altice, J., concur.